UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16-cv-781-RJC
(3:11-cr-337-RJC-DSC-12)

| | |
|---|---|
| CORVAIN T. COOPER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| Respondent. ) | |
| _____) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1). Also pending are the following motions: the Government's Motion to Dismiss, (Doc. No. 6), the Government's Motion to Amend/Correct Motion to Dismiss, (Doc. No. 8), and Petitioner's Motion to Supplement Motion to Vacate, (Doc. No. 9). Petitioner is represented by Patrick Michael Megaro.

**I.    BACKGROUND**

From 2004 through 2013, Petitioner Corvain T. Cooper participated in a drug conspiracy that distributed marijuana from California to co-conspirators on the East Coast, including those in North Carolina. See (Crim. Case No. 3:11-cr-337-RJC-DSC-12, Doc. No. 400 at 171-74: Trial Tr.). Petitioner worked with others to obtain marijuana in California and then to package and ship it to co-conspirators on the East Coast. (Id.). The East Coast co-conspirators distributed the marijuana and returned the proceeds to Petitioner and his co-conspirators in California. Petitioner used FedEx, UPS, and other private shippers to transport thousands of pounds of marijuana. (Id. at 196, 263).

1

Distributors deposited proceeds into bank accounts in the names of several individuals, including Natalia Wade and Evelyn LaChapelle, and in amounts below $10,000. (Id. at 175; 264-65; Doc. No. 401 at 27-30). Petitioner enlisted assistance from others to withdraw the marijuana proceeds from banks in California, also in amounts below $10,000. (Id., Doc. No. 400 at 135-36; 214-16). The marijuana distribution operation generated millions of dollars. (Id. at 229).

As a result of these activities, Petitioner was charged in a third superseding indictment with conspiracy to distribute and to possess with intent to distribute 1,000 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(b)(1)(A), 846 (Count One); money laundering, in violation of 18 U.S.C. § 1956(h) (Count Two); and structuring and aiding and abetting the structuring of financial transactions to avoid reporting requirements, in violation of 31 U.S.C. § 5324(a)(3), (d)(1), (d)(2); 18 U.S.C. § 2, and 31 C.F.R. §§ 103.11, 103.22 (Count Four). (Id., Doc. No. 288: Third Superseding Indictment). The Government filed an Information pursuant to 21 U.S.C. § 851, identifying Petitioner's two prior California felony drug convictions: a July 2011 conviction for selling/furnishing marijuana and hashish, and an August 2011 conviction for possession of a controlled substance (codeine). (Id., Doc. No. 419 at ¶ 52: PSR). Petitioner was sentenced to two years of imprisonment for each conviction. See (Id. at ¶¶ 51, 52).

Petitioner was tried with two of his co-conspirators, LaChapelle and Wade. A number of witnesses, including co-conspirators Leamon Moseley, Darrick Johnson, and Daniel Crockett, testified that they personally worked with or observed Petitioner when Petitioner obtained marijuana in California, prepared it for shipment, and shipped it to the East Coast. Johnson testified that Petitioner procured marijuana from a Mexican source at Johnson's direction, and Moseley testified that he accompanied Petitioner when Petitioner procured marijuana from his

source. (Id., Doc. No. 400 at 129-30, 181). Johnson and Moseley both testified that Petitioner packaged the marijuana for transport. (Id. at 127, 182). Johnson testified that Petitioner shipped marijuana at his direction, and Moseley testified that he helped Petitioner with shipping. (Id. at 127, 181-82). Crockett testified that he and Petitioner both obtained marijuana, obtained money or packaging materials, and prepared and shipped marijuana. (Id. at 199-201). Crockett also testified that he accompanied Petitioner to Charlotte to investigate when a crate of marijuana that they shipped was stolen. (Id. at 205-06).

Shondu Lynch and Sharon Janette Kelsey-Brown (Brown), two of the distributors operating in North Carolina with whom Petitioner worked, testified about what happened to the marijuana after it was shipped and how the distributors paid for it. Lynch testified that he received the marijuana by FedEx and by crate and that he paid for it by depositing money into bank accounts in the name of Wade and LaChapelle. (Id. at 263-65). Brown testified that she received marijuana by FedEx and by crate and that Petitioner discussed with her when the marijuana was to arrive, how much was coming, and how much money she was to send back. (Id., Doc. No. 401 at 26-27, 30-31). Brown also testified that she was told to deposit the money into particular accounts, including those of Wade and LaChapelle, in amounts below $10,000. (Id. at 27, 29-30). Multiple witnesses testified about how Petitioner and Crockett retrieved marijuana proceeds in California. (Id., Doc. No. 400 at 135-36, 210, 212-16, 227).

A number of witnesses who participated in the drug-trafficking operation testified about the quantity of marijuana that was shipped from California to the East Coast. Crockett testified that he and Petitioner shipped 40-80 pounds of marijuana five days a week, year round, every year. (Id. at 195-96, 263). Crockett also testified that on about 40-50 occasions he and Petitioner shipped crates containing 300-500 pounds of marijuana by truck. (Id. at 197-203).

3

Brown testified that she received approximately a dozen crates and that she received approximately 500 pounds of marijuana per day from California. (Id., Doc. No. 401 at 26, 31-32, 36). Johnson testified that when he was working with Petitioner, he was distributing 100-120 pounds of marijuana per week, and that he worked with Petitioner from about 2004 until 2009 and then again from 2012 until 2013. (Id., Doc. No. 400 at 171-72, 177). Lynch testified that he received approximately 40 pounds a day from Petitioner and Crockett five days a week from January through May 2009. (Id. at 263). Lynch also testified that Petitioner was involved in selling him marijuana on three separate occasions that totaled 550 pounds. (Id. at 262, 269-70).

  During the trial, law enforcement agents testified about the results of their extensive investigation of the marijuana distribution operation in which Petitioner participated. Detective James Beaver, who worked with the Charlotte-Mecklenburg Police Department and who was a task force officer with Homeland Security Investigations, testified that he had been involved in hundreds of marijuana investigations. (Id., Doc. No. 403 at 31-32). Beaver testified that he had more than 21 years of experience investigating drug-trafficking charges and through that experience had become "familiar with the methods of trafficking to include packaging, distribution, movement of proceeds, [and] pricing" of marijuana. (Id. at 32). Beaver testified that on January 9, 2009, he discovered 338 pounds of a substance that tested positive for marijuana in a crate that had been sent from California to North Carolina. (Id. at 31, 39-41). Through surveillance of this crate, Beaver was able to identify the man who picked up the crate as Gerren Darty. (Id. at 42-43, 46). Darty met with Crockett after he picked up the crate. (Id. at 47). Phone records showed Darty called Petitioner the same day that the crate arrived. (Id. at 62-63). Shipping records for the crate showed that it was sent through the Freight Center, a Florida company. (Id. at 70-71).

4

In February 2009, Beaver found two abandoned crates almost identical to the one found on January 9, 2009. (Id. at 71). Although the crates were opened, they smelled like marijuana. (Id. at 73). A shipping label from the crates was connected to Darty through records obtained from the Freight Center. (Id. at 73-75). In July 2009, officers discovered a third crate that had been discarded behind a business in Charlotte. (Id. at 75). Records showed that it had been sent from California by Crockett. (Id. at 77-78). Based on records from the Freight Center, Beaver was able to determine that approximately 24 crates had been shipped from California to Charlotte. (Id. at 78). Phone numbers associated with the shipping records were connected to members of the conspiracy. See, e.g., (Id. at 84-87). Based on the weight of the original crate, which contained 338 pounds of marijuana, or approximately 48% of the crate's total weight, and the weight of the crates from the shipping records, Beaver estimated that the 24 crates contained approximately 5,000 pounds of marijuana. (Id. at 80-81).

Agents also testified about the results of surveillance they conducted of participants in the drug-trafficking operation in California and North Carolina, searches they conducted, and interviews of people who interacted with the participants. (Id. at 104-15). Agents additionally described telephone records that revealed a host of contacts between Petitioner and other co-conspirators, including 1,336 contacts from January to March of 2009 between Petitioner and LaChapelle. (Id. at 66). Agents reviewed records of cash deposits and withdrawals in bank accounts of individuals involved in the drug-trafficking operation, including those of Petitioner and LaChapelle. (Id. at 176-97; Doc. No. 400 at 7-10). Special Agent Glen MacDonald with Homeland Security Investigations testified that he had investigated over 100 people for money laundering and that the term "CTR" referred to a cash transaction report, which is a report that a bank must complete for cash transactions that involve over $10,000. (Id., Doc. No. 403 at 168-

69).  MacDonald testified that people often make transactions under $10,000 in the hope of avoiding a CTR.  (Id. at 171).  He testified that, in this case, money was being deposited in North Carolina and elsewhere and then, shortly thereafter, was being withdrawn in California.  (Id.).

Officer David Rudy of the Beverly Hills, California, police department testified that he had been involved with investigating drug offenses for eleven years.  (Id., Doc. No. 400 at 97-98).  Rudy testified that he recovered marijuana from Petitioner in Beverly Hills in January 2009.  (Id. at 98-99).  Rudy stopped Petitioner after observing his black Jaguar speeding and weaving in and out of traffic.  (Id. at 99-100).  Rudy detected the smell of marijuana, and Petitioner granted consent to search the vehicle.  (Id. at 100-01).  Rudy found a brick of marijuana wrapped in plastic wrap in the vehicle's trunk, as well as a "pays and owes" document, which Rudy recognized as a drug dealer's checkbook.  (Id. at 101-03).  Petitioner told Rudy that he was delivering the marijuana to his mother.  (Id. at 101).

Petitioner was not arrested on the charges in the indictment until January 2013.  Detective Beaver was present and spoke with Petitioner at the time of his arrest.  (Id., Doc. No. 403 at 118, 125, 136-37).  Petitioner called no defense witnesses at trial.  (Id., Doc. No. 401 at 187).  The jury convicted him of all three charges.  (Id., Doc. No. 351: Jury Verdict).  A probation officer prepared a presentence report, calculating Petitioner's base offense level as 38, based on the offense involving 45,000 pounds of marijuana and Petitioner having possessed a dangerous weapon.  (Id., Doc. No. 419 at ¶ 22).  A two-level enhancement applied because Petitioner was convicted under § 1956.  (Id. at ¶ 23).  A four-level enhancement applied because Petitioner was an organizer or leader of criminal activity that involved five or more participants, and a two-level increase for obstruction of justice applied because Petitioner sent a letter threatening a co-defendant.  (Id. at ¶¶ 25-26).  Based on these calculations, the probation officer found that

6

Petitioner's total offense level was 46, but under the Guidelines this was treated as an offense level of 43. (Id. at ¶¶ 27, 38). Petitioner had 17 criminal history points, which placed him in criminal history category VI. (Id. at ¶ 55). Based on a total offense level of 43 and a criminal history category of VI, the guidelines range was life imprisonment. (Id. at ¶ 83). Pursuant to § 841(b)(1)(A), a mandatory life term applied to Petitioner's conviction of Count One because he had two prior felony drug convictions. (Id. at ¶ 82).

At sentencing, Petitioner conceded the validity of the predicate convictions, but argued that imposition of a mandatory life sentence violated the Eighth Amendment. (Id., Doc. No. 488 at 3-6). This Court overruled that objection, but granted his objection to the two-level enhancement for obstruction of justice. (Id. at 6, 9). Although this reduced Petitioner's offense level to 44, it did not reduce his guidelines range. See (U.S.S.G. Ch. 5, Pt. A, cmt. 2 (offense levels above 43 are treated as level 43)). This Court sentenced Petitioner to concurrent sentences of life imprisonment on Count One, 240 months of imprisonment on Count Two, and 120 months of imprisonment on Count Four. (Id., Doc. No. 461: Judgment).

Petitioner appealed, arguing that this Court erred in admitting evidence of his 2009 traffic stop and marijuana conviction, by denying his motion to sever, and by finding that the mandatory life sentence was not unconstitutional. United States v. Cooper, 624 F. App'x 819, 820 (4th Cir. 2015), cert. denied, 136 S. Ct. 1502 (2016). He also asserted that there was insufficient evidence to show that the conspiracy to distribute 1,000 kilograms or more of marijuana was reasonably foreseeable to him, and that he had received ineffective assistance of counsel. Id. The Fourth Circuit affirmed Petitioner's conviction and sentence and dismissed his claims of ineffective assistance, finding that "his attorney's ineffectiveness does not appear on

7

the face of the record," and that such claims could be pursued under Section 2255. Cooper, 624 F. App'x at 823.

Petitioner timely filed the present Section 2255 motion in November 2016, arguing that he should be resentenced because his August 2011 conviction for possession of a controlled substance (codeine) has been re-characterized as a misdemeanor and that his attorney provided ineffective assistance. (Civ. Doc. Nos. 1, 2). The Government filed its response and motion to dismiss on February 16, 2017, arguing in part that the motion is time-barred. (Civ. Doc. No. 6). On February 22, 2017, Petitioner filed a reply to the Government's response. (Civ. Doc. No. 7). On March 1, 2017, the Government filed a motion to amend/correct the Government's motion to dismiss to concede that the petition is timely. (Civ. Doc. No. 8).

On June 8, 2017, Petitioner filed a motion to supplement, noting that on May 24, 2017, a California court vacated one of Petitioner's felony convictions (selling/furnishing marijuana) that was used to enhance his sentence in this Court and replaced it with a misdemeanor conviction. Specifically, Petitioner notes that he "has applied for Proposition 64 relief from the predicate conviction in Case # BH SA 07215401, Beverly Hills, California, as alleged in the 851 enhancement, through California counsel. On May 24, 2017, the California court vacated the felony conviction and replaced it with a misdemeanor conviction." (Doc. No. 9 at 1). On June 22, 2017, the Government filed a response in opposition to Petitioner's motion to supplement. (Doc. No. 10). This matter is therefore ripe for disposition.

II. **STANDARD OF REVIEW**

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the

8

claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

### A. Petitioner's claim that he is entitled to resentencing based on California's reclassification of Petitioner's state drug offense for codeine possession as a misdemeanor.

In November 2014, California voters passed Proposition 47. Proposition 47 allows certain offenders, including those charged with unlawful possession of a controlled substance under California Health and Safety Code § 11350(a), to apply to have their sentences reduced to or designated as a misdemeanor. See CAL. PENAL CODE § 1170.18. In his first claim, filed in his original motion to vacate, Petitioner asserts that he applied for relief under Proposition 47 in June 2016, and the state court subsequently granted his motion and imposed a misdemeanor sentence for his August 2011 codeine offense. (Civ. Doc. No. 2). Based on this subsequent reclassification, Petitioner argues that he should be resentenced. (Id. at 8-11).

Petitioner's claim fails. Although the Proposition 47 statute provides that any felony conviction that is re-designated a misdemeanor "shall be considered a misdemeanor for all purposes," § 1170.18(k), it also provides that "[r]esentencing pursuant to this section does not diminish or abrogate the finality of judgments in any case that does not come within the purview of this act," § 1170.18(n). Furthermore, the Ninth Circuit held in United States v. Diaz, 838 F.3d 968, 975 (9th Cir. 2016), cert. denied, 2017 WL 276254 (Jan. 23, 2017), that Proposition 47 "does not undermine a prior conviction's felony-status for purposes of § 841," since the state's later actions cannot change the fact that a defendant committed his federal offense after his

9

conviction for a felony drug offense became final. See also McFarland v. United States, 2016 WL 6600071, at *4 (E.D. Mo. Nov. 8, 2016) (rejecting the argument that reclassification of a predicate state felony as a misdemeanor entitled petitioner to relief under Section 2255).

A prior conviction is considered a felony drug offense if it is a drug "offense that is punishable by imprisonment for more than one year under any law . . . of a State." 21 U.S.C. § 802(44). As long as the prior conviction meets this definition, it is a felony drug offense for purposes of Section 841(b), regardless of whether a state labels the offense a misdemeanor or a felony. See Burgess v. United States, 553 U.S. 124, 126-27 (2008). Here, Petitioner was sentenced to two years of imprisonment for this prior offense. See (Crim. Case No. 3:11-cr-337-RJC-DSC-12, Doc. No. 419 at ¶ 52). Accordingly, California's reclassification of his offense as a misdemeanor does not change the fact that it was a felony drug offense under federal law.[1]

Finally, in support of his argument that he should be resentenced, Petitioner relies on United States v. Dorsey, 611 F. App'x 767 (4th Cir. 2015), United States v. Mobley, 96 F. App'x 127 (4th Cir. 2004), and United States v. Gadsen, 332 F.3d 224 (4th Cir. 2003). In each of those decisions, however, the prior state predicate offense was vacated or expunged, not downgraded. Here, there is no infirmity in Petitioner's prior conviction—rather, state law was changed, but that did not alter the propriety of his previously imposed federal sentence. See McNeill v. United States, 563 U.S. 816, 820-22 (2011) (holding that state change in maximum term of imprisonment for an offense did not retroactively alter the maximum term of imprisonment that applied when a defendant committed the offense); cf. United States v. Foote, 784 F.3d 931, 932, 941 (4th Cir.) (holding petitioner's claim was not cognizable under Section 2255, where he was

---

[1] Furthermore, as the Government notes in its response, even without considering this second drug offense, Petitioner would still be subject to a life sentence under the Guidelines and under § 841. See § 841(b)(1)(A); U.S.S.G. Ch. 5, Pt. A (Table).

10

improperly sentenced as a career offender, but his prior state convictions had not been vacated so there was no fundamental miscarriage of justice), cert. denied, 135 S. Ct. 2850 (2015). In sum, because the retroactive reclassification of Petitioner's prior state offenses as a misdemeanor does not change the federal classification of that offense, his claim that he should be resentenced is dismissed.

### B. Petitioner's claims that his counsel rendered ineffective assistance of counsel.

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000). To establish ineffective assistance of counsel at sentencing, a petitioner must show that but for counsel's deficient performance, there is a reasonable probability that he would have received a lower sentence. See Royal v. Trombone,

11

188 F.3d 239, 249 (4th Cir. 1999). If a petitioner fails to conclusively demonstrate prejudice, the reviewing court need not consider whether counsel's performance was deficient. United States v. Terry, 366 F.3d 312, 315 (4th Cir. 2004).

**i. Petitioner's allegation that counsel was deficient for failing to object to the officers' testimony.**

In support of his ineffective assistance of counsel claim, Petitioner first argues that counsel was ineffective for failing to object to testimony by law enforcement officers at Petitioner's trial. Petitioner does not cite any specific portions of the record, but contends generally that "the testimony of Detective Beaver, Agent McDonald, and Officer Rudy regarding the drug business and money laundering" was based on hearsay. (Doc. No. 2 at 13). He asserts that counsel should have objected to their testimony because it relied on information from debriefing cooperators, suspects, and other law enforcement sources. (Id.). For the following reasons, this claim will be dismissed.

The Court first notes that because Petitioner has failed to identify any specific testimony to which counsel should have objected, this claim is subject to dismissal as conclusory. See United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding it was proper to dismiss § 2255 claims based on vague and conclusory allegations). In any event, the claim fails on its merits. Each of the law enforcement agents whose testimony Petitioner contends was objectionable testified based on the agent's own personal knowledge and experience. Detective Beaver testified that he had more than 21 years of experience investigating drug-trafficking charges and through that experience became "familiar with the methods of trafficking to include packaging, distribution, movement of proceeds, and pricing" of marijuana. (Crim. Case No. 3:11-cr-337-RJC-DSC-12, Doc. No. 403 at 32). Agent MacDonald testified that he had

12

investigated drugs and money laundering since graduating from a training academy in 2002 and that he had investigated more than 100 people for money laundering. (Id. at 168-69). Finally, Officer Rudy testified that he had been involved in investigating drug offenses for his entire eleven-year career, and he described his personal observations from when he stopped Petitioner's vehicle in January 2009 and found marijuana in the car's trunk. (Id., Doc. No. 400 at 98-101). Petitioner's attorney was not deficient because he could reasonably have concluded that no objections were warranted because the testimony of Detective Beaver, Agent MacDonald, and Officer Rudy was admissible. See, e.g., United States v. Ayala-Pizzarro, 407 F.3d 25, 26-28 (1st Cir. 2005) (holding that testimony from a law enforcement officer "about drug distribution points and how they operate as well as how heroin is normally packaged for distribution at these points" based on his previous experience was admissible under Federal Rule of Evidence 701).

Moreover, even if Petitioner's counsel had concluded that the law would support an objection, it would not have been unreasonable for counsel to conclude that an objection would have prompted the Government to successfully seek to qualify these officers as experts, United States v. Wilson, 484 F.3d 267, 273-74 (4th Cir. 2007) (describing the discretion a district court has to admit testimony of a law enforcement officer as an expert in the field of investigating drug-trafficking), and that such a qualification might bolster the credibility of these witnesses in a manner unhelpful to Petitioner's defense.

In support of his claim, Petitioner relies on the Second Circuit's decision in United States v. Meija, 545 F.3d 179, 194-99 (2d Cir. 2008). In that case, however, the concern was that someone testifying as an expert witness would testify as to matters that did not require expert testimony or would submit hearsay to the jury under the guise of expert testimony and this would carry undue weight due to the witness's status as an expert. See United States v. Johnson, 587

13

F.3d 625, 636 (4th Cir. 2009) (distinguishing Meija and finding as proper admission of expert testimony that was based on independent judgment and subject to cross-examination). Here, the officer's training and experience qualified them as experts in the field. Although Petitioner points to no specific instances in which testimonial hearsay statements were submitted to the jury, the officers would have been permitted to rely on hearsay to form an opinion, see United States v. Palacios, 677 F .3d 234, 242 (4th Cir. 2012), . Accordingly, counsel's performance was not deficient.

Additionally, Petitioner cannot show prejudice. This was a particularly strong case. Petitioner cannot show that, absent this testimony regarding the drug business and money laundering, there is a reasonable probability that the result of the proceeding would have been different. See Strickland, 466 U.S. at 687-88, 694. Accordingly, this claim of ineffective assistance of counsel is denied.

**ii. Petitioner's allegation that counsel was deficient for failing to object to Detective Beaver's identification of Petitioner's voice based on Beaver's prior interaction with Petitioner.**

Petitioner next contends that counsel was deficient for failing to object to Detective Beaver's identification of Petitioner's voice based on Beaver's prior interaction with Petitioner. For the following reasons, this contention is without merit. Under Federal Rule of Evidence 901(b)(5), an opinion regarding voice recognition need not be made by an expert. FED. R. CIV. P. 901(b)(5). Rather, an opinion as to the identification of a voice is admissible "based on hearing the voice at any time under circumstances that connect it with the alleged speaker." (Id.). "All that is required is that the witness have the requisite familiarity with the speaker's voice." United States v. Robinson, 707 F.2d 811, 814 (4th Cir. 1983). Here, Detective Beaver

14

testified that he was able to recognize Petitioner's voice on a recording of a phone call from jail based on his prior interaction with Petitioner at the time of Petitioner's arrest in January 2013. (Crim. Case No. 3:11-cr-337-RJC-DSC-12, Doc. No. 403 at 136-37). This was sufficient to allow admission of this testimony. See United States v. Ware, 29 F. App'x 118, 119 (4th Cir. 2002) (affirming admission of police officer's testimony to identify defendant's voice on a tape recording); United States v. Jackson, No. 97-4102, 1997 WL 764523, at *3 (4th Cir. Dec. 12, 1997) (holding that a law enforcement agent who spoke with a defendant when processing him during his arrest was competent to identify the defendant's voice on a tape). Additionally, Petitioner stated his identification number at the beginning of the call, and Beaver confirmed that this number belonged to Petitioner. (Crim. Case No. 3:11-cr-337-RJC-DSC-12, Doc. No. 403 at 137). Therefore, Petitioner's attorney did not perform unreasonably by declining to object to Beaver's identification of Petitioner's voice because such an objection would have been meritless. Additionally, there were other methods for admitting this evidence, see Fed. R. Evid. 901(b), so any objection also would have been fruitless. In sum, Petitioner cannot show deficient performance or prejudice based on counsel's failure to object to Beaver's voice recognition testimony. See Strickland, 466 U.S. at 687-88, 694. Accordingly, this claim of ineffective assistance of counsel is denied.

**iii. Petitioner's allegation that counsel was deficient for failing to object to testimony by Detective Beaver regarding certified shipping records and drug amounts.**

Petitioner next alleges that counsel was deficient for failing to object to testimony at trial regarding certified shipping records and drug amounts. For the following reasons, this contention is without merit. Records kept in the course of a regularly conducted business activity are admissible as an exception to the hearsay rule. FED. R. EVID. 803(6)(B). Such

records are self-authenticating where they are certified. FED. R. EVID. 902(11). Here, Detective Beaver testified that he had reviewed certified records from the Freight Center, which he had obtained after discovery of the first crate containing marijuana. (Crim. Case No. 3:11-cr-337-RJC-DSC-12, Doc. No. 403 at 39, 43, 78). He was able to connect those records to the conspiracy through phone records and names, as well as descriptions of the contents of the crates. (See, e.g., id. at 38, 70-71, 74-77, 81-87).

Petitioner's attorney did not perform deficiently by declining to object to the admission of the shipping records about which Beaver testified. Petitioner's attorney could reasonably have concluded that any objection would have been meritless because the records were of a regularly conducted business activity and admissible without the live testimony of a records custodian. FED. R. EVID. 902(11) (deeming certified domestic records of regularly conducted activities as self-authenticating); United States v. Mallory, 461 F. App'x 352, 357 (4th Cir. 2012) ("[T]he Sixth Amendment right to confront witnesses does not include the right to confront a records custodian who submits a Rule 902(11) certification of a record that was created in the course of a regularly conducted business activity."). Moreover, Petitioner's attorney could reasonably have concluded that even a successful objection would not have assisted Petitioner because, if necessary, the Government would have responded by calling a document custodian as a witness. Because the records were properly admitted, Petitioner also cannot show prejudice.

Finally, Petitioner's attorney did not perform deficiently by declining to object to Detective Beaver's estimate of the amount of marijuana transported in the 24 shipments that Beaver reviewed. Beaver's testimony was based on his personal participation in the seizure of marijuana and his review of shipping records that recorded the gross weight of each shipment included within his calculation. Based on the one crate from which the marijuana was recovered,

Beaver estimated that only 48% of each crate's gross weight was marijuana. See (Crim. Case No. 3:11-cr-337-RJC-DSC-12, Doc. No. 403 at 80-81). Petitioner's attorney could reasonably have concluded that this testimony was not speculative. See United States v. Levy, 207 F. App'x 833, 837-38 (9th Cir. 2006) (upholding a sentence based on a drug quantity derived from the "ratio of total package weight to amount of Ecstasy" from a seized shipments applied to other shipments about which "it knew from the UPS airbills the exact total weights"). Moreover, Beaver's estimate of 5,000 pounds of marijuana was considerably lower than the 12,000 pounds that Crockett testified that he and Petitioner shipped by crate. See (Crim. Case No. 3:11-cr-337-RJC-DSC-12, Doc. No. 400 at 197-203 (stating they shipped 300-500 pounds of marijuana in crates on 40-50 occasions). This estimate was also well below the more than 10,000 kilograms of marijuana that Crockett and Johnson each testified were transported as part of their participation in the trafficking activities. See (Id. at 171-72, 177, 195-203). Petitioner's attorney therefore could reasonably have concluded either that Beaver's testimony did more good than harm for Petitioner's defense, or that it was inconsequential and an objection would only distract from more fruitful challenges. Thus, counsel's performance was not deficient.

Petitioner has also failed to show prejudice. Although Petitioner contends that Beaver's testimony was crucial to establishing the 1,000 kilograms of marijuana charged in Count One of the Indictment, Doc. No. 2 at 14, he cannot show prejudice from Beaver's testimony, given the testimony from Petitioner's co-conspirators that his offense involved over four times the amount of marijuana to which Beaver testified. Petitioner's contention that such testimony was necessary to connect him to the Western District of North Carolina is also misplaced, particularly in light of Crockett's testimony that he went to Charlotte with Petitioner to look for a missing crate. See (Crim. Case No. 3:11-cr-337-RJC-DSC-12, Doc. No. 400 at 205-06). In sum,

17

Petitioner cannot show deficient performance or prejudice based on his counsel's failure to object to Detective Beaver's testimony regarding certified shipping records and drug amounts. Accordingly, this claim of ineffective assistance of counsel is denied.

### C. Petitioner's Motion to Supplement based on California's reclassification of Petitioner's state drug offense for selling marijuana as a misdemeanor.

The Court next considers Petitioner's motion to supplement his 28 U.S.C. § 2255 motion. In his motion to supplement, filed on June 8, 2017, Petitioner seeks to add information regarding his July 2011 conviction for selling marijuana and the fact that a California state court has re-characterized this conviction as a misdemeanor. Specifically, Petitioner notes that on May 24, 2017, a California state court re-designated Petitioner's prior felony conviction for selling marijuana as a misdemeanor conviction. See (Doc. No. 9-1). Petitioner contends that he is therefore entitled to sentencing relief for the same reason he contends he is entitled to sentencing relief based on the fact that his prior codeine conviction has also been reclassified as a misdemeanor conviction.

Federal Rule of Civil Procedure 15(d) provides that a "court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." FED. R. CIV. P. 15(d). Rule 15(d) is construed similarly to motions to amend pursuant to Rule 15(a). See Franks v. Ross, 313 F.3d 184, 198 n.15 (4th Cir. 2002). "[L]eave to amend shall be given freely, absent bad faith, undue prejudice to the opposing party, or futility of amendment." United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000). Where an amendment seeks to add an entirely new claim that would otherwise be barred, leave should be denied if the claim does not relate back to the original pleading. Id. at 317. New claims do not relate back where they are based on "separate

occurrences of both time and type." Id. at 318 (internal quotation and citation omitted) (denying leave to amend where the appellant had originally challenged his sentence enhancement, but sought to amend to challenge his sentence enhancement on another basis).

Petitioner's request to supplement his Section 2255 motion with information relating to the reclassification of his state marijuana conviction from a felony to a misdemeanor is denied because any supplement to his original motion would be futile. That is, even if the Court considers the contents of the motion to supplement, the reclassification of Petitioner's marijuana conviction from a felony to a misdemeanor does not alter that fact that it still constitutes a prior felony drug offense under Section 841. As the Court has already discussed, supra, a state's later reclassification of an offense "does not undermine a prior conviction's felony-status for purposes of § 841." Diaz, 838 F.3d at 975. Nor does a state's label of an offense as a misdemeanor matter, if, as here, the prior conviction is a drug offense that is punishable by more than a year of imprisonment. See Burgess v. United States, 553 U.S. 124, 126-27 (2008); 21 U.S.C. § 802(44); Cal. Health & Safety Code § 11360(a) (2011). Accordingly, Petitioner's motion to supplement his Section 2255 motion is denied.

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. The Government's Motion to Amend/Correct Motion to Dismiss, (Doc. No. 8), and the Government's Motion to Dismiss, (Doc. No. 6), are both **GRANTED**.

3. Petitioner's Motion to Supplement Motion to Vacate, (Doc. No. 9), is **DENIED**.

4. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: September 30, 2017

Robert J. Conrad, Jr.
United States District Judge